CHRISTEN,. Circuit Judge,
with whom Circuit Judge HURWITZ joins, concurring:
I agree with the results reached by the majority: Kirkpatrick’s claim was correctly dismissed; a reasonable jury could have found the warrantless seizure of B.W. vio-láted her constitutional rights'but the individual social workers were entitled to qualified' immunity; and the County was not entitled to summary judgment on the claim that its policies violated B.W.’s Fourth Amendment rights. I write separately to address, briefly, what the court describes as “the unlikely possibility that Whitworth' might unexpectedly abscond with B.W.” Maj. Op. at 792.
In Rogers v. County of San Joaquin, we unequivocally explained that social workers áre required to obtain a warrant before seizing a child unless there is “reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.” 487 F.3d 1288, 1294 (9th Cir. 2007). Here, the social workers’ testimony makes plain that they gave no thought to obtaining a warrant, apparently because the *798 County made no effort to train its social workers on this requirement. The dissent argues that B.W.’s constitutional rights were not violated because the County correctly trained its workers to remove children only in exigent circumstances. See Dissent Op. at 801-02. But the record tells us nothing about how long it might have taken to obtain a warrant and almost nothing about how likely it was that Whitworth would leave the hospital before a warrant could be obtained. For example, we cannot tell whether the social workers’ conversations with Whitworth caused concern that she might leave. There were unresolved questions of fact at the summary judgment stage, but it was known that the informal “hold” DSS requested did not actually prevent Whitworth from leaving the hospital with B.W., or giving another adult permission to remove the baby.
If the disputed facts are construed in the light most favorable to B.W., it must be assumed that it would have been possible for the social workers to obtain a warrant without delay. On the other hand, it only takes minutes to walk out of a hospital. Even if the risk that Whitworth would leave with B.W. was small, I cannot set aside the possibility that Whitworth might have done so simply because she was recovering from a cesarean section. See Maj, Op. at 791-92. Social workers are entitled to rely on their experience, and at least one social worker testified that she had seen patients recovering from cesarean sections leave the hospital unexpectedly. Compounding the problem, Whitworth had a poor track record of staying in touch with the social workers and they knew they had no way to reach her if she left the hospital.
Boiled down, it seems to me that the individual social workers correctly determined that this newborn faced a catastrophic risk if her mother removed her from the hospital, (she “could die if she goes home with a mother who’s high on drugs and forgets to feed her”), and it would only- have taken a few minutes for someone to leave with B.W. The social workers’ error, if any, was in pegging the likelihood that B.W.’s mother would leave with her. The social workers may have jumped the gun, but how much risk were they inquired to tolerate with the life of a newborn baby at stake? I conclude the social workers reasonably refused to gamble that Whitworth would make the sound decision to leave B.W. in the hospital. Thus, the applicable standards entitle them to qualified immunity.